**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MATTHEW M. STEVENS,**

                                        **Plaintiff,**

        **vs.**                                                         **6:21-CV-1258**
                                                                        **(MAD/ML)**

**CITY OF ONEONTA,**

                                        **Defendant.**

---

**APPEARANCES:**                                      **OF COUNSEL:**

**MATTHEW M. STEVENS**
391 South America Road
Worcester, New York 12197
Plaintiff *pro se*

**COUGHLIN & GERHART, LLP**                  **ANGELO D. CATALANO, ESQ.**
P.O. Box 2039
99 Corporate Drive
Binghamton, New York 13902-2039
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff commenced this action *pro se* on November 22, 2021, alleging disability

discrimination, failure to accommodate, and retaliation in violation of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. *See* Dkt. No. 1.  Plaintiff filed an amended

complaint with this Court on December 13, 2021.  *See* Dkt. No. 10.  Currently before the Court is

Defendant's motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure ("FRCP").  *See* Dkt. No. 31.

## II. BACKGROUND

### A.      Plaintiff's Complaint

Plaintiff began his employment with Defendant, City of Oneonta, on or around July 20, 2009.  *See* Dkt. No. 31-5 at 8.  Plaintiff worked for Defendant as a wastewater treatment plant operator ("WWTPO") for more than a decade.  *See* Dkt. No. 1-4 at 126.  Plaintiff suffers from sarcoidosis of the heart and lungs, an auto-immune disease that causes inflammation and scar tissue in the afflicted areas.  *See* Dkt. No. 10 at 2.  As a result, Plaintiff experiences "shortness of breath, left chest pains, frequent wheezing, coughing a lot – clear mucus and blood from coughing, and low oxygen levels."  *See id.*

In October 2018, Plaintiff suffered multiple heart attacks and, as a result, was put on a twelve-week leave under the Family Medical Leave Act ("FMLA").  *See* Dkt. No. 1-4 at 126.  At the conclusion of his FMLA leave, Plaintiff remained out of work on involuntary sick leave until January 2020.  *See id.* at 127.  After returning to work on January 6, 2020, Plaintiff continued to struggle with his health.  *See id.*  Between January 9, 2020, and February 3, 2020, Plaintiff was absent from work on three separate occasions as a result of his medical condition.  *See* Dkt. No. 1-4 at 56.  On February 3, 2020, Defendant placed Plaintiff on medical leave pursuant to New York State Civil Service Law ("CSL") § 72.  *See id.*  Plaintiff was thereafter examined by Dr. John J. May, MD, at Bassett Medical Center Pulmonology, on March 11, 2020.  *See* Dkt. No. 1-4 at 28. Dr. May's report stated: "[Plaintiff] is OK to return to customary activities at work.  He is NOT approved for use of a respirator.  Job activities requiring a respirator must be deferred to other workers."  *See id.*

Following this appointment, Plaintiff contested his CSL § 72 leave.  *See* Dkt. No. 1-5 at 31.  Plaintiff sought reinstatement to his position as WWTPO subject to an accommodation that

he be excused from all duties requiring the use of a respirator. *See id.* at 32. Defendant denied

Plaintiff's request and asserted that a WWTPO may be required to wear a respirator at any time,

so Plaintiff could not reasonably be excused of this function in its entirety. *See id.* The parties

then engaged in a CSL § 72 appeal hearing on June 29, 2020, led by hearing officer Randy Ray.

*See* Dkt. No. 1-4 at 89–151. Defendant produced two witnesses: Katie Bottger, Personnel

Director and Acting Assistant City Manager, and Greg Mattice, City Engineer. *See id.* at 105–23.

Both witnesses testified that the ability to wear a respirator is an essential function of the

WWTPO position. *See id* at 108, 118. Both witnesses also stated that the nature of the work of a

WWTPO is subject to the respiratory safety standards promulgated by the United States

Occupational Safety and Health Administration ("OSHA"). *See id.* at 108, 120. Ms. Bottger

testified:

> [T]he ability to wear a respirator is part of an OSHA standard based
> on the type of operation at the wastewater treatment plant, and also
> given the nature of the operation, we have a small crew of people.
> They don't work in teams. Oftentimes they work in different parts
> of the plant, you know, on their own so it's important that they are
> wearing a respirator.

*See id.* at 108. In response, Plaintiff testified that wearing a respirator was not an essential

function of his position as a WWTPO. Plaintiff testified that:

> [T]he other 90 percent of what I [do] down there I do not wear a
> respirator . . . I can do everything else but wear a respirator and
> that's only for the one task, the chemical transfer, which only takes
> a half hour to 45 minutes in one month and we only do it from
> October to April[.]

*See id.* at 142. After reviewing the evidence, the hearing officer found that Defendant's decision

to place Plaintiff on CSL § 72 leave because of his inability to wear a respirator was supported by

substantial evidence. *See* Dkt. No. 31-7 at 6. The Mayor of Oneonta, Gary Herzig (the "Mayor"),

formally adopted the hearing officer's findings on September 15, 2020, and Plaintiff remained on medical leave pursuant to CSL § 72. *See* Dkt. No. 1-5 at 42-43.

On August 10, 2021, Plaintiff was notified that his employment with Defendant would terminate on August 13, 2021, following more than one consecutive year of absence pursuant to CSL § 73. *See* Dkt. No. 1-4 at 156. Plaintiff requested a pre-termination hearing to further contest the facts surrounding his CSL § 72 leave and CSL § 73 termination. *See* Dkt. No. 31-8 at 2–3. Plaintiff met with Mayor Herzig for a pre-termination meeting on November 5, 2021. *See id.* Plaintiff reiterated the same arguments that he presented at the CSL § 72 appeal hearing, and Mayor Herzig concluded that Plaintiff was unable to perform the job duties of a WWTPO. *See id.* Plaintiff's employment with Defendant terminated on November 12, 2021. *See id.*

Plaintiff previously filed a federal claim against Defendant, and two individual defendants who are not a party to this action, alleging ADA discrimination and failure to promote due to his sarcoidosis. *See* Dkt. No. 31-4. Plaintiff urges that although the instant action involves the same employer, Defendant City of Oneonta, this claim is different than the first case. *See* Dkt. No. 32 at 13. Plaintiff alleges that this case is about Defendant's failure to accommodate and his subsequent termination due to his inability to use a respirator. *See id.*

**B.    Procedural History**

On March 1, 2019, Plaintiff filed an initial charge ("2019 Charge") with the New York State Division of Human Rights ("DHR"), charging Defendant with violating the ADA. *See* Dkt. No. 31-2. Plaintiff authorized the DHR to accept the 2019 Charge on behalf of the U.S. Equal Employment Opportunity Commission ("EEOC"). *See id.* at 1. After an investigation, the DHR found no probable cause for finding discrimination by Defendant and dismissed the 2019 Charge. *See* Dkt. No. 31-3. The EEOC adopted the DHR's findings on December 26, 2019. *See* Dkt. No.

31-4 at 14.  On March 20, 2020, Plaintiff filed his first lawsuit in this Court alleging that

Defendant violated the ADA for failure to promote and retaliation based on Plaintiff's disability.

*See id.* at 2.  The action was dismissed by this Court on October 6, 2020, and the dismissal was

affirmed by the Second Circuit on September 30, 2021.  *See Stevens v. City of Oneonta, et al.*, No.

20-3672, 2021 WL 4472494 (2d Cir. Sept. 30, 2021).

On January 8, 2021, Plaintiff filed a second charge ("2021 Charge") with the DHR,

charging Defendant with violating the ADA once more.  *See* Dkt. No. 31-5.  After an

investigation, the DHR found no probable cause for finding discrimination and dismissed the

2021 Charge.  *See* Dkt. No. 31-6.  The EEOC adopted the DHR's findings on September 20, 2021.

*See* Dkt. No. 1-3.  On November 22, 2021, Plaintiff filed another lawsuit before this Court

alleging that Defendant violated the ADA for termination of employment, failure to

accommodate, and retaliation based on Plaintiff's disability.  *See* Dkt. No. 1 at 2.  Plaintiff filed an

amended complaint on December 13, 2021.  *See* Dkt. No. 10.

In its motion to dismiss, Defendant first argues that the Court should dismiss because

Plaintiff has failed to prove a *prima facie* case of discrimination under the ADA.  *See* Dkt. No.

31-9 at 12.  Next, Defendant contends that Plaintiff's ADA claims are barred by the statute of

limitations because the 2021 Charge with the DHR was filed more than 300 days after the last

alleged discriminatory act.  *See id.* at 16.  Defendant also contends that Plaintiff failed to exhaust

his administrative remedies.  *See id.* at 17.  Finally, Defendant contends that Plaintiff has failed to

comply with Rule 8 of the Federal Rules of Civil Procedure.  *See id.* at 18.

### III. DISCUSSION

**A.      Standard of Review**

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Dutrow v. New York State Gaming Commission*, No. 13-cv-996, 2014 WL 11370355, *3 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. Appx. 56 (2d Cir. 2015).  "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([*i.e.*,] subject-matter jurisdiction)." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

When subject matter jurisdiction is challenged, the plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova*, 201 F.3d at 113).

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [ ] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.*  In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" *Greenblatt v. Gluck*, No. 03 Civ. 597, 2003 WL 1344953, *1 n.1

(S.D.N.Y. Mar. 19, 2003) (quoting *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1992)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

7

plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## B.     Timeliness

A plaintiff asserting a claim under the ADA must bring a complaint of workplace discrimination to the EEOC within 300 days of an incident's occurrence, and then file a related lawsuit within 90 days of receiving a notice of right to sue from the EEOC.  *See Bowens v. Corr. Ass'n of New York*, No. 19-CV-1523, 2019 WL 1586857, *5 (E.D.N.Y. Apr. 12, 2019); *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011).  This filing period operates as a statute of limitations, so the failure to file a timely administrative complaint will bar a plaintiff's claims.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred."  *Id.*

In the present matter, Plaintiff filed his 2021 Charge with the DHR, and the EEOC, on January 8, 2021. *See* Dkt. No. 31-5 at 2. Thus, any alleged acts of discrimination prior to March 14, 2020, are time-barred. Plaintiff's requests for relief for his involuntary sick leave from March 14, 2020, dating back to October of 2018 are therefore beyond the statute of limitations.

Plaintiff was placed on CSL § 72 medical leave on February 3, 2020, *see* Dkt. No. 1-4 at 56, and was examined by Dr. May on March 11, 2020, for a medical evaluation to determine his fitness for work, *see id.* at 28. These events also occurred outside the applicable 300-day window. However, on March 19, 2020, Defendant denied Plaintiff's request to return to work subject to an accommodation that he be excused of all respirator-related activities. *See* Dkt. No. 1-5 at 32. This discrete act was within the 300-day period prior to Plaintiff's filing of the 2021 Charge. Thus, Plaintiff's claim regarding Defendant's decision to keep Plaintiff on CSL § 72 medical leave following his examination with Dr. May, and Defendant's subsequent decision to terminate Plaintiff after more than one year elapsed pursuant to CSL § 73, are timely.

## C.      Failure to Exhaust

"[T]he ADA's administrative exhaustion requirement mandates that district courts have 'jurisdiction to hear [discrimination] claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge.'" *Cable v. N.Y. State Thruway Auth.*, 4 F. Supp. 2d 120, 126 (N.D.N.Y. 1998) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)). Claims are considered to be reasonably related when "(1) they would fall within the scope of the EEOC investigation which reasonably could be expected to arise from the original charge of discrimination; or (2) the later claim alleges that the employer is retaliating against plaintiff for filing the original EEOC charge; or (3) the plaintiff 'alleges further incidents of

discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Id.* (quoting *Butts*, 990 F.2d at 1402-03).  However, "[t]he EEOC cannot be expected to investigate mere generalizations of misconduct, nor can defendants adequately respond to them." *Choi v. Chem. Bank*, 939 F. Supp. 304, 312 (S.D.N.Y. 1996) (citations omitted).  "Thus, if Plaintiff's claims of discrimination, subsequent to the filing of the EEOC charge, would reasonably be expected to fall within the scope of the EEOC investigation, this Court may properly consider them." *Id.* (citation omitted).

Defendant alleges that Plaintiff's ADA claim with respect to his termination of employment is subject to dismissal for failure to exhaust administrative remedies. *See* Dkt. No. 31-9 at 17.  Defendant asserts that because Plaintiff never alleged any claim relating to his termination before the EEOC, such a claim must be dismissed. *See id.*  Defendant argues, unpersuasively, that Plaintiff's termination "is not necessarily connected to his involuntary leave in February 2020." *See id.* at 18.  Plaintiff was placed on involuntary leave pursuant to CSL § 72 on February 3, 2020.  *See* Dkt. No. 1-4 at 56.  Under CSL § 72(4), "[i]f an employee placed on leave pursuant to this section is not reinstated within one year after the date of commencement of such leave, his or her employment status may be terminated in accordance with the provisions of section seventy-three of this article." N.Y. Civ. Serv. Law § 72(4).  Plaintiff was thereafter terminated on November 12, 2021, pursuant to CSL § 73 for having been on CSL § 72 involuntary medical leave for more than one consecutive year. *See* Dkt. No. 31-8 at 2.  The allegations contained in Plaintiff's 2021 Charge are almost entirely the same allegations that ultimately gave rise to his termination in November 2021.  Despite Defendant's attempt to dilute the relationship between Plaintiff's involuntary leave and his subsequent termination, the Court finds Plaintiff's termination reasonably related to the alleged discrimination in the 2021 Charge,

and therefore sufficiently within the Court's jurisdiction.  *See Lohf v. Runyon*, 176 F.3d 488 (10th Cir. 1999); *Ziemba v. Slater*, 36 F. Supp. 2d 81, 85 (D. Conn. 1999) (citing cases).

**D.     Res Judicata**

The doctrine of res judicata, or claim preclusion, "preclude[s] later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)).  Additionally, once a final judgment has been entered by a court of competent jurisdiction, "the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Id.* (internal quotation marks omitted).  "Such a judgment precludes the subsequent litigation both of issues actually decided in determining the claim asserted in the first action[ ] and of issues that could have been raised in the adjudication of that claim." *Colonial Acquisition P'ship v. Colonial at Lynnfield, Inc.*, 697 F. Supp. 714, 717-18 (S.D.N.Y. 1988) (quoting *Nat'l Labor Relations Bd. v. United Techs. Corp.*, 706 F.2d 1254, 1259 (2d Cir. 1983)).

Issue preclusion prevents the "relitigation of issues actually litigated and necessary to the outcome of a prior action." *Alfadda v. Fenn*, 966 F. Supp. 1317, 1325 (S.D.N.Y. 1997) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).  This doctrine brings an end to litigation "once the party to be bound has had a fair opportunity to litigate the issue," and promotes judicial economy. *Id.* at 1327.

While Plaintiff supplements some of his 2021 Charge with facts dating back to 2016 that were previously alleged in Plaintiff's first lawsuit, *see* Dkt. No. 31-5 at 11, the Court agrees with

11

Plaintiff that the substantive issue in the present action is different and arises out of a separate set

of facts than those outlined in Plaintiff's first lawsuit, *see* Dkt. No 1-4 at 13.  The present claim

deals with the Defendant's decision to keep Plaintiff on CSL § 72 leave, which subsequently led

to Plaintiff's termination pursuant to CSL § 73, because of his inability to wear a respirator.  *See*

*id.*  This issue was not a subject of Plaintiff's prior lawsuit, and as such, the doctrine of claim

preclusion does not apply.

**E.      ADA Disability Discrimination Claim**

The ADA provides that "no covered entity shall discriminate against a qualified individual

on the basis of disability in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training and other terms, conditions, and

privileges of employment."  42 U.S.C. § 12112(a).  "Claims alleging disability discrimination in

violation of the ADA are subject to the burden-shifting analysis originally established by the

Supreme Court in *McDonnell Douglas Corp. v. Green*[.]" *McBride v. BIC Consumer Prods. Mfg.*

*Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802 (1973)).  However, "the survival of a complaint under Rule 12(b)(6) scrutiny in an

employment discrimination case 'does not rest on whether it contains specific facts establishing a

*prima facie* case.'" *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 489 (E.D.N.Y. 2015)

(quoting *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 236 (E.D.N.Y. 2011)).

At the pleading stage, the court "considers only whether the complaint includes factual

allegations sufficient 'to raise a right to relief above the speculative level.'" *Gonzalez v.*

*Carestream Health, Inc.*, 520 Fed. Appx. 8, 10 (2d Cir. 2013) (quoting *Twombly,* 550 U.S. at

555).  "In other words, the [c]ourt asks only whether a plaintiff has pled a *prima facie* case, not

whether a plaintiff has established that case." *Laface v. E. Suffolk BOCES*, 349 F. Supp. 3d 126,

145 (E.D.N.Y. 2018) (quoting *Figueroa*, 89 F. Supp. 3d at 489); *see also Vega v. Hempstead*

*Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (noting that "a plaintiff is not required to

plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated,

to defeat a motion to dismiss"); *Dooley v. JetBlue Airways Corp.*, 636 Fed. Appx. 16, 21 (2d Cir.

2015) (applying this pleading standard to an ADA discrimination claim).

A *prima facie* case of discrimination under the ADA requires that the plaintiff demonstrate

that "(1) [his] employer is subject to the ADA; (2) [he] is disabled within the meaning of the

ADA; (3) [he] is otherwise qualified to perform the essential functions of [his] job with or without

accommodation; and (4) [he] suffered an adverse employment action because of [his] disability."

*Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 Fed. Appx. 123, 127 (2d Cir.

2019) (citing *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004)).

Defendant does not contest the first, second, or fourth elements of Plaintiff's *prima facie*

case in its motion to dismiss.  Defendant's motion takes issue with the third element of Plaintiff's

*prima facie* case, claiming that Plaintiff is not a "qualified individual with a disability seeking a

reasonable accommodation" under the ADA.  *See* Dkt. No. 31-9 at 11.  "[T]he determination of

whether a person is 'qualified' [to perform the essential functions of his job] should be made at the

time of the discriminatory employment action."  *Smith v. Town of Ramapo*, 745 Fed. Appx. 424,

426 (2d Cir. 2018).  To determine a particular job's "essential functions," this Court "must

conduct 'a fact-specific inquiry into both the employer's description of a job and how the job is

actually performed in practice.'"  *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017)

(quoting *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013)).  Factors to consider

include, *inter alia*, "the employer's judgment, written job descriptions, the amount of time spent

on the job performing the function, . . . and the work experience of current employees in similar

positions." *Stevens*, 851 F.3d at 229 (quoting *McMillan*, 711 F.3d at 126) (citations omitted); *see also* 29 C.F.R. § 1630.2(n)(3).

Defendant asserts that the ability to wear a respirator at any moment is an essential function of the WWTPO position. *See* Dkt. No. 31-9 at 14. Ms. Bottger testified at Plaintiff's CSL § 72 appeal hearing that there are a limited number of WWTPOs that work for the City of Oneonta, so it is important that each be able to wear a respirator. *See id*. at 7. She also testified that Defendant is subject to OSHA standard operating procedures, which require the ability to use a respirator. *See id*. Given Plaintiff's admission that he cannot wear a respirator because of his disability, *see* Dkt. No. 1-4 at 11, Defendant argues that Plaintiff is unable to perform the essential functions of a WWTPO and therefore, Plaintiff cannot be an "otherwise qualified individual[,]" *see* Dkt. No. 31-9 at 14.

In contrast, Plaintiff pleads that the ability to use a respirator is not an essential function of the WWTPO position. *See* Dkt. No. 1-4 at 11. Plaintiff asserts that respirator-related work comprises a negligible fraction of the actual daily job responsibilities of a WWTPO. *See id.* at 6. Plaintiff also claims that the respirator-related work is not highly specialized, and therefore, could easily be delegated to other employees at the plant without creating undue hardship for Defendant. *See id.* Plaintiff specifically notes that the written job description for a WWTPO does not state that the employee must be able to use a respirator. *See id.* at 9.

Presumed to be true, Plaintiff has alleged sufficient facts to satisfy the third element of his ADA claim. In support of its motion to dismiss, Defendant relied heavily upon the statements made by Ms. Bottger and Mr. Mattice during the CSL § 72 appeal hearing, including Ms. Bottger's reference to an unidentified OSHA standard governing the operation of the wastewater treatment plant. *See* Dkt. No. 31-9 at 7. Defendant's attempts to analogize the present case to the

14

recent Second Circuit decision in *Bey v. City of New York* are unpersuasive.  *See Bey v. City of New York*, 999 F.3d 157 (2d Cir. 2021).  First, the parties in *Bey* cross-moved for summary judgment following a period of discovery.  *See id.* at 162.  Second, in its defense to the plaintiffs' ADA claim, the defendant pointed to a specific OSHA regulation that prohibited employees who wear tight-fitting face pieces to have facial hair between the sealing surface of the face and facepiece.  *See id.* at 166.  The court found that this regulation was unambiguous and clearly applied to the plaintiff firefighters in that action.  *See id.*

Here, Defendant did not identify any specific OSHA regulation at issue, nor did Defendant present any data or evidence regarding the conditions of the daily operations at the wastewater plant that would necessitate the adherence to said regulation.  Although "[i]t may be a defense to a charge of discrimination under this part that a challenged action is required or necessitated by another Federal law or regulation," *see* 29 C.F.R. § 1630.15(e), Defendant erroneously presumes that there is enough information contained in the pleadings for this Court to conclusively determine that defense on a motion to dismiss.  While Defendant may ultimately prove and persuade the Court as to this potential defense, the information is insufficient and not properly considered on a motion to dismiss, since it is outside the pleadings and not information of which the Court can take judicial notice.  Accordingly, making all reasonable inferences in Plaintiff's favor, as it must, the Court concludes that Plaintiff plausibly alleges that the ability to wear a respirator was not an essential function of his position as a WWTPO, and thus he was qualified for his job with a reasonable accommodation at the time of his involuntary leave, and subsequent termination.  *See ATSI Commc'ns, Inc.*, 493 F.3d at 98 (citation omitted).

Based on the foregoing, the Court denies Defendant's motion to dismiss as to Plaintiff's disability discrimination claim.

**F.      Failure to Accommodate Claim**

"An employer may . . . [also] violate the ADA by failing to provide a reasonable accommodation" for an employee's disability. *Dominelli v. N. Country Acad.*, No. 1:16-CV-203, 2016 WL 6833992, *2 (N.D.N.Y. Nov. 18, 2016) (quoting *McMillan*, 711 F.3d at 125).  To state a claim under the failure to accommodate framework, a plaintiff must show that "(1) [p]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Harvin v. Manhattan and Bronx Surface Transit Operating Auth.*, 767 Fed. Appx. 123, 126 (2d Cir. 2019) (quoting *McBride*, 583 F.3d at 96-97).

"Reasonable accommodations may include adjustments to work schedules or other job restructuring." *McMillan*, 711 F.3d at 127 (citing 45 C.F.R. § 84.12(b) (2005)).  However, "an accommodation is reasonable only if its costs are not clearly disproportionate to the benefits that it will produce." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995) (citing *Vande Zande v. Wis. Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995)).  Furthermore, "[t]he accommodation must allow the employee to perform the essential functions of [his] job at the same level as the rest of the workforce." *Fowler v. Kohl's Dep't Stores, Inc.*, No. 1:07-CV-1197, 2009 WL 2155481, *5 (N.D.N.Y. July 16, 2009) (citing *Borkowski*, 63 F.3d at 138 n.3).

In the present matter, Plaintiff has plausibly alleged a *prima facie* failure to accommodate claim under the ADA.  Defendant does not appear to contest elements one or two of Plaintiff's failure to accommodate claim.  Defendant contends that the accommodation that Plaintiff seeks is unreasonable as it would require the removal of an essential function of Plaintiff's position.  *See* Dkt. No. 31-9 at 14.  As discussed in the discriminatory discharge analysis directly above, the

Court has already found that Plaintiff plausibly alleged facts sufficient to challenge Defendant's assertion that the ability to wear a respirator is an essential function of the WWTPO position. Construed in Plaintiff's favor, an accommodation to be excused of respirator-related duties could be reasonable if the need to be able to wear a respirator is not an essential function of a WWTPO. Both the essential function inquiry and the reasonableness of Plaintiff's proposed accommodation are issues which cannot presently be resolved without further discovery.

Based on the foregoing, the Court denies Defendant's motion to dismiss as to Plaintiff's failure to accommodate cause of action.

## G.      Retaliation Claim

The ADA also prohibits employment "discriminat[ion] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  ADA retaliation claims are also analyzed under the *McDonnell Douglas* burden-shifting framework.  *See Wagner v. Cty. of Nassau*, No. 11-CV-1613, 2014 WL 3489747, *8 (E.D.N.Y. July 11, 2014).  Accordingly, "the [c]ourt asks only whether a plaintiff has pled a *prima facie* case, not whether a plaintiff has established that case."  *Laface*, 349 F. Supp. 3d at 145 (quoting *Figueroa*, 89 F. Supp. 3d at 489).

A *prima facie* case for retaliation under the ADA requires that a plaintiff show that "'(1) [he] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse [employment] action; and (4) there was a causal connection between the protected activity and that adverse action.'"  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).

17

"The ADA is not, however, a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing 42 U.S.C. § 12203(a)).  "The ADA's retaliation provision only prohibits retaliation against a person because the person 'opposed any act or practice made unlawful *by this chapter*' or 'made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing *under this chapter*.'"  *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (holding that "a workers' compensation claim is not something that is covered by the ADA") (emphases in original); *see also Skinner v. City of Amsterdam*, 824 F. Supp. 2d 317, 332 (N.D.N.Y. 2010) (holding that "filing a complaint with the DOT is not protected participation under the ADA").

In the present matter, Plaintiff's complaint fails to set forth a plausible claim for retaliation under the ADA.  In his complaint, Plaintiff alleges that he was placed on involuntary medical leave and terminated from his job because of his disability.  *See* Dkt. No. 10 at 6.  He makes no claim that these adverse employment actions were the result of his participation in protected actions under the ADA, and the complaint provides no additional facts in support of his retaliation claim.  Although temporal proximity between filing a claim with the EEOC and an adverse employment action can often support an inference of retaliation, no such inference can be drawn from the complaint in the present matter.  Plaintiff filed his first claim with the EEOC on March 1, 2019, *see* Dkt. No. 31-2 at 3, and his second claim on December 28, 2020, *see* Dkt. No. 31-5 at 2.  Plaintiff was not notified of his official termination pursuant to CSL § 73 until August 10, 2021, which was not finalized until November 12, 2021, after Plaintiff engaged in a pre-termination meeting with the mayor's office.  *See* Dkt. No. 31-8.  This was nearly a year after the

18

second DHR charge was filed.  Courts have generally found that, when relying on temporal

proximity, the protected activity must be "very close" to the adverse employment action, "which

ordinarily means closer in time than a few months."  *Cortez v. Connecticut, Dep't of Transp.*, 606

F. Supp. 2d 246, 251 (D. Conn. 2009) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268,

273 (2001)); *see also Chamberlin v. Principi*, 247 Fed. Appx. 251, 254 (2d Cir. 2007) (holding

that temporal proximity was insufficient to support the plaintiff's retaliation claim where there

was a five-month interval between the plaintiff's complaint with the EEOC and the alleged

adverse employment action).

Having failed to plausibly allege a causal connection between any protected activity and

the adverse employment action, the Court grants Defendant's motion to dismiss as to Plaintiff's

ADA retaliation claim.[1]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED in part and DENIED in**

**part**; and the Court further

---

[1] As to Defendant's Rule 8 contentions, the Court is unconvinced that Defendant seriously struggled to discern the substance of Plaintiff's complaint.  Defendant has been aware of, and actively defending against, the allegations in Plaintiff's complaint since he first contested his CSL § 72 leave and was denied his request for reinstatement on March 19, 2020.  Although Plaintiff's accompanying documents to the complaint were voluminous and unconventional, given Plaintiff's *pro se* status, the Court finds no reason to compel the Plaintiff to provide additional statements with respect to the pleadings.

ORDERS that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 1, 2022
        Albany, New York

Mae A. D'Agostino
U.S. District Judge